UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| LISA BELL, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF ALLEN BELL, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) )  Cause No. 1:21-CV-368-HAB ) |
| WALMART, INC., | ) ) |
| Defendant. | ) |

**OPINION AND ORDER**

If a frog had wings…. That's the phrase that sticks in the Court's mind as it reads the party's briefs. Allen Bell ("Bell") slipped and fell at a self-checkout lane in a Walmart store operated by Defendant. The apparent cause of the fall was water that had been spilled from a plant purchased by another customer only seconds earlier.

If this case were in an Indiana state court, Plaintiff's claim might survive the motion for summary judgment (ECF No. 16) that is now fully briefed. (ECF Nos. 17, 21, 22, 25-1). If the law on constructive knowledge was different, Plaintiff's claim might survive. If another customer had not caused the spill, Plaintiff's claim might survive. But none of those things are true, so this is a straightforward case in which Defendant is entitled to summary judgment.

**I.  Factual Background**

This case is simple and uncontested. In September 2020, Defendant operated the Walmart store in Angola, Indiana. As was store practice, employees watered a stand of potted mums located outside the store at 6:30 a.m. About two hours later, a customer ("First Customer") selected several

of the plants and brought them into the store for purchase. First Customer used one of the many self-checkout ("SCO") registers to complete her purchase.

It took First Customer about two minutes to complete her purchase. During those two minutes, water from the mums dripped onto the floor around the SCO. As First Customer left the SCO register, the Walmart Associate ("Associate") tasked with monitoring the SCO area began helping a customer at a different SCO register. It is undisputed that the Associate did not see the puddle that had formed from First Customer's mums.

Twelve seconds after First Customer left, Bell arrived to use the same SCO register. It took Bell less than one minute to complete his purchase. As he turned to leave, he slipped and fell. Bell suffered a hyperextended left knee, resulting in ongoing knee and ankle pain. Bell passed away in January 2022 from COVID-19.

## II. Legal Discussion

### A. *Summary Judgment Standard*

Although state law provides the substantive law in a diversity action, the summary judgment procedure is governed by federal law. *Maroules v. Jumbo, Inc.*, 452 N.E.3d 639, 645 (7th Cir. 2006). Twenty-five years ago, the Indiana Supreme Court observed, rightly, that the Indiana state summary judgment standard and the federal summary judgment standard are very different.

> Under Indiana's standard, the party seeking summary judgment must demonstrate the absence of any genuine issue of fact as to a determinative issue, and only then is the non-movant required to come forward with contrary evidence.
> \* \* \*
> In this respect, Indiana's summary judgment procedure abruptly diverges from federal summary judgment practice. Under the federal rule, the party seeking summary judgment is not required to negate an opponent's claim. The movant need only inform the court of the basis of the motion and identify relevant portions of the record which it believes demonstrate the absence of a genuine issue of material

> fact. The burden then rests upon the non-moving party to make a showing sufficient to establish the existence of each challenged element upon which the non-movant has the burden of proof. Indiana does not adhere to *Celotex* and the federal methodology.

*Jarboe v. Landmark Comm. Newspapers of Ind., Inc.*, 644 N.E.2d 118, 123 (Ind. 1994) (citations omitted). While Indiana does not follow the procedure set forth in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), federal courts, including this one, do. Therefore, in this case the burden is on Plaintiff to establish the existence of the elements she would have to prove at trial. Failure to do so dooms her claim no matter what an Indiana court may do on the same facts, since "[f]ederal courts may grant summary judgment under Rule 56 . . . even if the state would require the judge to submit an identical case to the jury." *Carson v. ALL Erection & Crane Rental Corp.*, 811 F.3d 993, 998 (7th Cir. 2016).

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must marshal and present the Court with evidence on which a reasonable jury could rely to find in its favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). A court must deny a motion for summary judgment when the nonmoving party presents admissible evidence that creates a genuine issue of material fact. *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011) (citations omitted). A court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

Facts that are outcome determinative under the applicable law are material for summary judgment purposes. *Smith ex rel. Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997). Although a

bare contention that an issue of material fact exists cannot create a factual dispute, a court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491–92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). A court is not "obliged to research and construct legal arguments for parties, especially when they are represented by counsel." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011).

Unlike in Indiana, *see, e.g.*, *Hughley v. State*, 15 N.E.3d 1000, 1004 (Ind. 2014) ("Indiana consciously errs on the side of letting marginal cases proceed to trial on the merits"), summary judgment is not a disfavored remedy in federal court. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327. It can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact. *United Food and Commercial Workers Union Loc. No. 88 v. Middendorf Meat Co.*, 794 F. Supp. 328, 330 (E.D. Mo. 1992). Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

**B.** *Defendant had neither Actual nor Constructive Knowledge of the Dangerous Condition, and is Entitled to Summary Judgment*

Since it is undisputed that Bell was an invitee at the time of the incident, Defendant's duty is defined by the Restatement (Second) of Torts § 343 which states:

4

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

*Rogers v. Martin*, 63 N.E.3d 316, 322 (Ind. 2016). Thus, while a landowner's duty to an invitee includes a duty to exercise reasonable care to protect the invitee from foreseeable dangers on the premises, there is no duty to ensure an invitee's safety while on the premises. *Booher v. Sheeram, LLC*, 937 N.E.2d 392, 395 (Ind. Ct. App. 2010). Because an invitor is not the insurer of the invitee's safety, before liability may be imposed on the invitor it must have actual or constructive knowledge of the danger. *Carmichael v. Kroger Co.*, 654 N.E.2d 1188, 1191 (Ind. Ct. App. 1995).

Plaintiff has identified no evidence that would demonstrate Defendant or its employees had actual knowledge of the puddle. Therefore, Plaintiff's case rises and falls on whether Defendant had constructive knowledge of the hazardous condition. To establish constructive knowledge, a plaintiff must show a "condition [which] has existed for such a length of time and under such circumstances that it would have been discovered in time to have prevented injury if the storekeeper, his agents or employees had used ordinary care." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1088 (7th Cir. 2018). While there is no bright line for determining how much time establishes a lack of ordinary care, periods of less than fifteen minutes have generally been held to be insufficient. *See Robinson v. Kroger*, 2014 WL 3405874, at *4 (S.D. Ind. 2014) (finding no issue of fact on constructive knowledge where foreign substance that caused plaintiff's fall was found to be present less than ten minutes); *Williams v. Meijer, Inc.*, 2013 WL 3146981, at *3 (S.D.

5

Ind. 2013) (finding no issue of fact on constructive knowledge where area of slip-and-fall had been inspected seven to twelve minutes before the plaintiff's fall).

If this law is applied, all parties seem to understand that the case is simple. The puddle existed for at most two minutes—if it was created when First Customer initially approached the SCO register. It may have existed for as little as twelve seconds. This time frame falls comfortably within the range where Defendant is entitled to summary judgment on the issue of constructive knowledge.

Understanding this, Plaintiff boldly asserts that "it makes no difference whether the Walmart employees were aware of the specific hazard" because, as Plaintiff sees it, Defendant "created the hazard" by requiring customers to bring wet plants indoors for purchase. (ECF No. 21 at 5-6). But Plaintiff has not cited a single case, from any jurisdiction, that holds that the knowledge requirement does not apply to these facts. This is true despite Plaintiff being given the special dispensation of a sur-reply. Plaintiff, then, has waived this argument. *See*, *e.g.*, *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("arguments that are unsupported by pertinent authority are waived").

Even if it weren't waived, Plaintiff's argument has no merit. What Plaintiff seems to argue is that, since Defendant knew it required customers to bring wet plants into the store, it had general knowledge that a puddle could occur. (ECF No. 25-1 at 8) ("It is clear that Walmart *knew* of the hazard generally in that they created the hazard…."). But the Seventh Circuit has made it clear that general knowledge of potential hazards is not enough.

> But just because the assistant manager knew that hazards were possible does not mean that he knew they had actually materialized at the place where Austin fell. There are many potential hazards that can exist in a store like Walgreens: soda bottles can fall off a display stand and leak, glass cosmetics jars can shatter on the floor, or toys could clutter an aisle. That any of those hazards and many others *could* occur at any given moment probably ought to be on the mind of a person charged

> with managing a store, but that does not automatically impute instantaneous knowledge of when those hazards come about.

*Austin*, 885 F.3d at 1089 (affirming summary judgment in a retail slip and fall case). Yes, Defendant should have, and probably did, know that water from outdoor plants posed a potential issue. But that does not mean that it knew of the puddle that caused Bell's fall, or that it can be held liable for that fall. To the contrary, actual or constructive knowledge of the puddle is required. Neither exist here.

Plaintiff finally argues that the doctrine of *res ipsa loquitor* saves her case. The doctrine of *res ipsa loquitur* recognizes that sometimes an occurrence is so unusual that, absent reasonable justification, the person in control of the situation should be held responsible. *Cergnul v. Heritage Inn of Indiana, Inc.*, 785 N.E.2d 328, 331 (Ind. App. 2003). The central question in *res ipsa loquitur* cases is whether the incident probably resulted from the defendant's negligence rather than from some other cause. *Deuitch v. Fleming*, 746 N.E.2d 993, 999 (Ind. App. 2001). To establish this inference of negligence, a plaintiff must demonstrate: (1) that the injuring instrumentality was within the exclusive management and control of the defendant, and (2) the accident is of the type that ordinarily does not happen if those who have management or control exercise proper care. *Balfour v. Kimberly Home Health Care, Inc*., 830 N.E.2d 145, 148 (Ind. Ct. App. 2005).

The parties dispute whether Plaintiff has established the two elements of *res ipsa*, particularly the control element. But that argument is not necessary. *Res ipsa* is not another way to demonstrate liability in a premises liability case. Instead, "if there's no liability under a premises liability standard, *res ipsa* cannot apply. As such, determining the *res ipsa* issue is necessarily dependent on whether a defendant can be liable under premises liability in the first place." *Griffin*

*v. Menard, Inc.*, 175 N.E.3d 811, 815 (Ind. 2021). Because, as discussed above, Defendant is not liable under a general premises liability theory, *res ipsa* cannot save Plaintiff's claim.

### III. Conclusion

For these reasons, Defendant's motion for summary judgment (ECF No. 16) is GRANTED. The Clerk is DIRECTED to close this case.

SO ORDERED on September 27, 2023.

                                         s/ *Holly A. Brady*
                                         JUDGE HOLLY A. BRADY
                                         UNITED STATES DISTRICT COURT